Good morning. Good morning. We are on the calendar today. We have four cases to be argued, a couple of them remotely via Zoom, but the first two live and in person. So we're ready to go on the first case, which is Kingstown Capital Management versus Radovan Vitek et al. Council, ready? Yes. Okay. And so you have, Mr. Schwartz, you've reserved two minutes for rebuttal. Is that right? That's correct. Okay. All right. You may proceed, Mr. Schwartz. Thank you, Your Honor. Good morning, and may it please the Court. The District Court's decision should be reversed because it leaves the plaintiffs with no place to go. Relying on the doctrines of form nonconvenience and international comedy extension, the Court below based its decision on the mistaken belief that the claims at issue here either already were being litigated in Luxembourg or could be litigated in Luxembourg, but that is wrong as a matter of law. The pending Luxembourg lawsuit involves different parties, different issues, different legal theories, and most fundamentally seeks to vindicate different legal rights, and plaintiffs cannot sue the same parties as they have here under similar legal theories or to vindicate similar rights. Well, when you say different legal rights, what do you mean? I mean, this is different laws, and so, yeah, there are some differences, some subtle, maybe others not so subtle, but what legal rights are you referring to that can't be vindicated in Luxembourg? Sure. So, at base, the case in Luxembourg is a case under Luxembourg corporate law for undisclosed conflicts of interest and other corporate law violations. This is a fraud case. The plaintiffs cannot, on the facts of this case, pursue fraud claims or claims that sound in criminal conduct in the courts of Luxembourg. Whether that ever would have been possible, it is not possible now, and this court's… Because they have the pending civil case? It's not possible now for a variety of reasons. It's not possible now because there is the previously filed civil case. It is not possible in our view, in our expert's view, because it was never possible on the facts of this case. It is not possible because certain of the defendants have refused to appear in the Luxembourg proceedings and are not consenting to the jurisdiction of the courts. So, those defendants, are they amenable to process in New York? All of the defendants, except for three Cypriot holding companies, have been properly served in the United States and appeared in this lawsuit. At least, so only a small number of them have said that they would submit to the jurisdiction of the Luxembourg courts, and at least one of them, Mr. Ott, has, in our view, evaded service, but certainly not been served and had the summons annulled against him in the Luxembourg proceedings. That alone destroys the adequacy of the form, because under this court's precedent, we have to be able to… I'm not sure I understand that. The issue was, as you put it, he evaded service, but he was successfully served in the United States, so as to make him subject to the jurisdiction of our courts? He was successfully served… How was that done?  And there's nothing similar. You could not have served him under Luxembourg law, or you just didn't do it. No. So, there's a substantial time difference, right? This lawsuit was filed in 2019. The Luxembourg lawsuit was filed in 2015. We didn't know where he was at the time. He had been non-public for a period of time. There were numerous attempts to serve him, including at an address that he himself had used. I get it. I understand that. But does the fact that somebody hides out mean that another country where he is perfectly legally able to be served stops being an appropriate forum? Yes. Why? Because if we cannot pursue our claims there through no fault of our own… Why is it… I mean, you have process servers. You have the ability to try to serve somebody. People hide out. Why does the fact that you did a better job serving him in New York say that Luxembourg thereby becomes an inappropriate forum? Because that goes to the heart of the forum non-convenience analysis, right? The analysis is not, is Luxembourg better than the United States? It's, we need to be able to pursue our claims against, for example, that individual someplace. If he wants to say Luxembourg is the right place, he's got to show up and defend the claims in Luxembourg. He can't say, United States is not the proper forum because Luxembourg is the right forum, but I'm not going to show up and defend in Luxembourg. And that's the situation… So if the district court had conditioned the forum non-convenience dismissal on Mr. Ott's agreement to be sued in Luxembourg, would that resolve that problem? If the district court had conditioned its forum non-convenience dismissal on the defendant submitting to the jurisdiction of the Luxembourg courts, that would have addressed a problem, and it would have avoided… Okay, it would have resolved that problem. Correct. Okay. And now as far as the more fundamental issue of the nature of the lawsuit, my impression reading the complaint here is this is what one might call a garden variety fraud claim. That's not pejorative. It just means it's the kind of fraud case that we see all the time because there are a lot of fraudsters in the world. You're telling – so what is it about Luxembourg law that prevents ordinary claims of fraud? It would be a strange legal system that didn't allow a claim like this to be brought. So help me out. So let me give you a substantive answer and a procedural answer. The substantive answer is, I think, several fold. It is, according to the Luxembourg law expert, the nature of the fraud here is not something that can be brought in a civil court in Luxembourg. Second – That's according to your expert, right? So there's this dispute. So why don't you tell me why you can't bring a fraud claim under Articles 1382 and 1383 of the Civil Code, which seem to suggest that you could bring any kind of a tort claim for any kind of a wrong on the part of the tort user. Well, that gets to the procedural problem, Judge Menasche, because the district court never engaged in that analysis. The district court never, as far as the record demonstrates – I'm not sure that's an answer to the judge's question. Could you try to answer directly what he asked you, which is what is the reason why this couldn't be brought under those specific statutes? So Mr. Moyse gives two answers to that. One is that on the facts and evidence of this case, those claims could not be actionable because of the nature of the evidence that the Luxembourg courts require. The other is, as Your Honor alluded to before, the pendency of – Okay, so I'm going to ask about both of those. So I'll do the second one first. So that point is because you have this pending civil claim, you can't bring this other claim. But there seems to be a dispute about that too. So your expert seems to be focused on the idea that you could bring in the penal court a claim for indemnification of a penal offense. But that's different than filing a claim under the civil code, right, for a tort? Well, what the expert says is that under the univea electo principle, having filed the claim in the civil chamber, it cannot be amended to include a civil claim for damages for essentially a violation. So then your argument ends up being because we have an ongoing case in Luxembourg and the Luxembourg law suggests that we can't bring additional claims while that's pending, that's a reason to open up the litigation domestically. I mean that means that you're arguing that because there's a related ongoing litigation in a foreign country, it means we should have an additional litigation domestically. If we're talking about what the most convenient forum is, shouldn't the fact of ongoing litigation in a foreign forum point toward that forum? Maybe it doesn't – it's not dispositive, but shouldn't it at least point toward that forum? It's a very odd argument to say because that litigation is there, we shouldn't proceed there. Only if you can vindicate the same rights. The problem here is at the time that the Luxembourg lawsuit was filed in 2015, we didn't have a factual basis for making the sort of fraud claims that are brought in this lawsuit. It was not until the CSSF, the Luxembourg Financial Regulator – Yeah, so you learn information from a Luxembourg financial regulator, right? And Luxembourg has a process for when you can and can't amend a complaint and how it would work. But that's not an argument that it's impossible to get relief on this kind of – for this kind of conduct in Luxembourg, is it? It's just to say that there are procedural hurdles. Well, what Mr. Moy says is that you could not at this point amend to include those sorts of allegations and that they have not amended to include those sorts of allegations again. And why is that? I mean you're saying this is newly discovered evidence. And you are telling me that an ordinary European advanced legal system does not provide an opportunity for a plaintiff to either file a new action or amend its complaint based on newly discovered additional evidence. I want to be careful about making categorical statements of Luxembourg law because that is certainly not my area of expertise. But what the expert says is that in this case they could not. And again, that gets to – But you keep saying this in a generalization, and I'm trying to understand what is the principle of law that would be intelligible to me that would prevent that? And if you can say, well, because there's this statute or this judicial decision or this procedural rule that says that – After all, foreign law is something that we are entitled to figure out for ourselves. We might be wiser to rely in some instances on experts, but when there are conflicting experts, I'm not sure that Luxembourg law is necessarily any stranger than Idaho law or Louisiana law, and we figure those out all the time. Tell me what the theory is. So I'm not sure with respect to the general principle of amendment the record reflects any nuanced explanation of Luxembourg law. Other than that, it can't happen. With respect to – But you see, the problem is what you're telling me, what you're asking me to rely on is my expert says you can't do it. Period. And I'm not getting any explanation. I mean it's your expert. You've presumably talked to the person, and you can, I would hope – first of all, I would think the material submitted by the expert would enable us to figure it out. We're asking – I'm asking for your help in explaining what is the rationale. Understood. And there is some of that in particular instances in the record here. So, for example, again, with respect to Mr. Ott, the expert explains that under Luxembourg law there's a citation to the civil code. You could potentially issue a new proceeding, a new summons, but you cannot re-summons in the same proceeding once it's annulled. The problem is if you issue a new summons, that is a new case – Am I mistaken? Well, I'm using that as an example since we would have to be able to do that with respect to Mr. Ott. So that's, I think, a place where the record goes deepest into Luxembourg law. But really, Your Honor, this gets to the procedural issue that I wanted to raise, which is as a result of the way these issues were raised in the district court, which is to say when the defendants made their motion, they did not even identify an alternative forum. They said – I'm sorry, Mr. Schwartz. I thought I had a simple question. I was trying to get you to explain to me what the expert's rationale is with regard to amendments of complaint. And you're telling me about a procedural problem in this case with respect to how the other side operated. That may be relevant to the issue, but it doesn't sound like it's relevant to my question. Well, I promise I will come to your question in half a breath. But the procedural problem is that there was no exploration of this substantive foreign law in the court below. But wait, wait, wait. Excuse me. Excuse me, Mr. Schwartz. They – I think you're correct anyway from my reading of the record. They didn't initially say – they just said like any place is better than here. We'll take any place in Europe better than here. You correctly pointed out, as I understand the law, they have to tell which place. They then said Luxembourg. You then brought in an expert in Luxembourg law. So whatever – maybe they waived it. Maybe the district court should have thrown them out on their ear for that reason. I don't know. But in terms of your opportunity to present Luxembourg law, you presented an expert. They then came back with an expert, and you had the opportunity to submit a supplemental response, right? No. To what they said. So they – Did I wrong about that? Yes. I am. Tell me why. So what happened in the court below is, as Your Honor observed, they made the motion but did not identify an alternative form or put forward any evidence. Because they had made the international comedy argument, largely, we put forward the expert declaration of Mr. Moyse. And in reply, they put forward an expert declaration. That closed that round of briefing. We did not have an opportunity to respond to that. What we did have, as they point out and as we point out in our brief, is a second round of briefing by some additional later served defendants. They also did not put forward a declaration in their motion. They incorporated small portions of the prior round of briefing. Our response was very carefully responsive only to that which they had incorporated. So what we didn't do was take, essentially, an unauthorized surreply and join all those issues. What we asked for is fair. As a result of all of this, you're telling me that you actually cannot tell me what your own expert's theory is with respect to what aspect of Luxembourg law would prevent you from filing an amended complaint or an additional action based on newly discovered evidence. And yet you are telling me that his opinion is that you can't. And therefore, we should defer to that opinion and say, well, that's a problem then. You can't present these claims. So you're correct. That narrow question I cannot answer right now. But I'm not asking you – I'm sorry. I didn't come in here expecting to ask you a question about amending compliance in particular. You raised that in your oral argument. I presume that in a relatively short oral argument, you're presenting your best arguments. You raised this possibility that despite newly discovered evidence that you can now present in this New York action, that that evidence cannot be presented in a Luxembourg court. And I ask the simple question, why not? And so far, you're basically telling me you don't know. And I appreciate that, and that's correct. But I want to be clear that I am not asking you – I'm not asking this court to defer to our expert. What we believe is the appropriate course of action, as this court did, for example, in Bugliotti, is to say because there are complicated issues of foreign law that were not engaged in by the district court and which – You're saying there should be a hearing or some kind of further development of the record on this point. Correct. Okay, but we're still interested in the actual question and what might come up there. So we don't have an answer on the amendment question, but you were about to say why it's not possible to file a new summons, even though it might technically be possible. What was the answer to that point? So to file a new case, there would have to be jurisdiction in Luxembourg to file a new case. So that's about getting service over the defendants. That's about needing to have a Luxembourg domiciliary as the basis for jurisdiction over any of the other defendants. Because remember, only one of the defendants here is a Luxembourg domiciliary. Everyone else – So the district court said that because there is a Luxembourg domiciliary, you would have jurisdiction over the defendants. So why is that wrong? Because that presumes, again, that all of the claims could be brought in the existing proceeding. You can't under the UNELECTO. Oh, I see. So if you file a new summons, it might not include the Luxembourg domiciliary. It couldn't include it under the UNELECTO doctrine. So then actually your amendment point is quite important because if you could amend the complaint, then that wouldn't be an issue. So that gets us to – so it's only once you decide that the only option is to file a new summons that it matters whether there is a Luxembourg domiciliary. And that is plainly correct with respect to Mr. Ott, and there is a detailed explanation for that. So I want to be clear, the expert cites – and I can give you the exact cite on rebuttal – the provision of Luxembourg law that says once annulled, you cannot re-summons Mr. Ott. You have to initiate a new proceeding. But again, you can't initiate a new proceeding against him because he's not a Luxembourg domiciliary. So the only way to get jurisdiction over – So can I ask another question? So we were saying that this was the question about amendment, but then the other thing that's raised by your expert is that those provisions of the civil code that allow for the tort claims are narrowly focused on contractual transactions or specific transactions between counterparties and maybe isn't as broad as American tort law for fraud claims. Doesn't that seem like that's just a difference in the scope of the causes of acts? Like if you can get recovery for this type of thing, but Luxembourg defines it more narrowly than the United States, I mean is that of a sufficient moment that we should say that that makes Luxembourg a totally inadequate forum? I mean then aren't we doing litigation where we're really parsing the details of the respective causes of action? I don't think so. Again, the adequacy analysis asks whether a plaintiff can vindicate his rights in the forum forum, whether you can litigate substantially the same issues. If a person is a victim of fraud and they don't have recourse to bring claims that roughly sound in fraud in the forum forum – One of the factors that we consider when deciding whether to defer to the plaintiff's choice of forum is whether somebody is trying to take advantage of more liberal laws in a jurisdiction. So obviously it's a valid consideration to say, well, you can't just pick this forum just because you think it's easier to get a recovery here or it's more expansive. And so I guess my question is if that is a relevant factor, then when you say, oh, well, Luxembourg defines the cause of action too narrowly or requires too many elements of proof, isn't that the same thing? I mean aren't you then just quibbling over the type of cause of action as opposed to saying this is a forum where all the courts are corrupt and you just can't vindicate your rights? Now you're saying, well, you can actually pursue a fraud claim, but it's defined too narrowly that we wouldn't be able to recover everything we want to in this specific case. No, I don't think so. And I mean with respect, that sort of is blending the consideration of the deference to the – No, I know. Those are two different factors, but it tells us that that is – that it can't be that because that's a legitimate consideration on the deference question that all of a sudden you have to actually parse it really narrowly. And if in fact one forum is more liberal than the other, you can only proceed in the more liberal forum. So obviously the analysis doesn't require identical causes of action, but what it does require is that we be able to litigate the subject matter of the dispute. So the Noritz case itself is a great example of this. That is an instance where the foreign forum could have heard the same issues, but on the facts of that case was precluded from doing so because there was a prior judgment that was played as a bar. So I think we're 13 minutes over. You've got two minutes to rebuttal, Mr. Schwartz, so why don't we – we'll hear from your adversary and we'll hear back from you in a bit. Thank you very much. Thank you. Thank you. Okay, Mr. Cohen, you may proceed. Thank you, Your Honors. Good morning. Seth Cohen of Hogan Levels. I represent the appellees here. Your Honors, Judge Cote got this case absolutely correct. All of the evidence that Mr. Schwartz was just referring to before Your Honors was considered by the district court. The district court reviewed the declarations. The district court had before it not only Professor Prune's declaration but two Mr. Moyse declarations, and Judge Cote made the determination that Luxembourg – Well, was the specific issue we were just talking about a moment ago considered? Like do we know why one expert thinks it's impossible to amend the complaint and the other expert thinks that that's not an issue? That was absolutely considered in the declarations, Judge Menasche. Okay, so why – what is the argument that you can't do the amendment and what's the argument for why, in fact, you can? I'm sorry. I didn't actually hear that. So what are those arguments? So what – So, Judge Menasche, I believe that you referred to it before and correctly, and that is that under Articles 1382 and 1383 of the Luxembourg law, you can bring – which Platis did bring – you can bring claims for fraud, for tort, which have 30-year statute of limitation. And those claims were brought in a Luxembourg accident. So the notion that the appellants need to go back and amend the complaint is baffling to me, frankly, because they – those claims will already be asserted in Luxembourg. What they're saying now, for the first time, by the way, on this appeal – they did not raise it before the district court and so we would argue it's vague – is that there is no place to go. That's the first thing that Mr. Schwartz says. They never made that argument in front of Judge Cote. They're saying that now because what they're saying is there's nowhere to go because we need to file a new criminal case in Luxembourg. Not so. Not so. As Professor Proom pointed out, they – their expert, Mr. Moyes, completely disregarded an entire regime of tort law in his declaration, which allows claims for fraud, breach of fiduciary duty, concealment, theft. All of those claims were brought there, and Judge Cote points out in the district court opinion that Luxembourg, as Judge Lynch, you said before – says that, well, you can bring tort claims under those provisions of the civil code, but they're so narrowly focused on contractual breach of contract between the counterparties that you couldn't really bring a freestanding claim for fraud. Is that – is that – do you have a response to that? Yes. It's not – it's not the complete picture. Mr. Moyes, in his declaration, said that there are two very narrow avenues for fraud, one of which was based – it's something called Dole. It's based on whether or not there's a contract. However, as Professor Proom points out, that's – it just disregards an entire area of tort law in Luxembourg where you can bring the types of theft claims that the appellants are seeking to bring in the district court, which I will state again, Judge Cote was aware of and had before her because all of these declarations were before Judge Cote, the district court. Could I ask a question about Mr. Ott? The argument is that he – somehow they managed to serve him via the Hague Convention in New York, but they couldn't serve him in Luxembourg because whatever, he was hiding out and they didn't know where to get him, whatever. Mr. Ott, then, is subject to the jurisdiction of the Southern District, and he is one of the moving parties, right, who's saying this case should be had here and is – or I guess the opposition to the motion. He's opposing the motion of a form of nonconvenience. Why isn't it sort of – is that right or is he not – he's not participating in the Southern District case either? No, no. He is Judge Lynch, but he is making the argument that form of nonconvenience applies. He's not contesting form of nonconvenience. Right. I'm sorry. I've got it backwards. So the – how – why isn't it just axiomatic that he can't do that if he's not agreeing to be subject to the jurisdiction of the Luxembourg courts? I understand that there is some discretion involved here, but at the same time, I guess as a former district judge who's faced those kinds of motions, that always seemed to me to be a sort of no-brainer to say if the guy is here and one party – and is asking to have the case thrown out here and litigated somewhere else. Okay, well, that's good, but if you're also then going to do a catch-22 and say, hi, you can't get me in Luxembourg, that's not fair, and so he has to agree. So why is that – why am I wrong about that? Why shouldn't that be something that should be a condition of the district court's order? Because it is not a catch-22, and the reason is because, first of all, Mr. Ott is contesting jurisdiction. We've made personal jurisdiction arguments before the district court. Judge Cote did not reach that. She refers to that in her opinion. There's no personal jurisdiction in the United States for any of these defendants, including Mr. Ott, and that's not what this appeal is about, but there's no personal jurisdiction. Putting that aside, however, Mr. Ott – Well, but that's not something that we can just say, right? I mean that's not been briefed to us or litigated at all. Correct, correct, but I believe Your Honor had said that he's before that court and that the court has jurisdiction. But at the same time, taking the position, or at least the district court hasn't put him to the test of, oh, is – if that's the place you want to be sued, God bless you. Go be sued there. Well, I don't think – But you have to admit that you will be sued there. Your Honor, I don't think Judge Cote needed to put Mr. Ott to the test, and the reason is because the district court made a finding that's opposite of what the – Mr. Schwartz is arguing here today. Mr. Schwartz is saying that Mr. Ott evaded service in Luxembourg. That is not what the district court found. On the record, the Luxembourg court – the Luxembourg court, which Judge Cote credits in footnote 15 on page 28 of her opinion, is that Ott was dismissed in the Luxembourg action due to plaintiff's failure to properly serve him. The Luxembourg court found that the plaintiffs were not – did not serve him by their own doing, not because Mr. Ott was doing so. Do you also have an – I suppose if Mr. Ott is not really subject to the jurisdiction of either court, just having the form of noncommittee dismissal shouldn't render him subject to jurisdiction of the other court. So like if his position is that he's not subject to jurisdiction in either place, I suppose then the district court, by requiring that as a condition of the dismissal, would be altering the way proceedings would normally work. Is that – do you have an argument to that effect? Well, that's a great point, Judge Benashi. But I think that – I don't want to gloss over the fact here that Mr. Ott is not saying that at all. Mr. Ott is saying that he's amenable to service in Luxembourg. In Luxembourg. He has to say that. Otherwise, it's not going to meet the criteria for an adequate alternative form. And I want to be clear, Judge Sullivan. He's not expressly consenting to service there. He's amenable to service there, which is slightly different. Under Luxembourg law, you're amenable to service. If you are a resident or domiciliary in the European Union, you have one defendant, CPIPG, which is located there. And the subject matter of the disputes are related. By that test alone, Mr. Ott is amenable to service in Luxembourg. He need not have expressly consented to jurisdiction before – What is the difference? I mean if the whole – if his argument hinges on the idea that he's amenable to service, why not to remove any doubt when you say, well, in fact, I'll accept service? Because I think it goes to your question before. Well, I mean I suppose just like here you're saying he was served but is still contesting personal jurisdiction. He could do that in Luxembourg. He could take service but still contest the authority of the court. So why not just consent to accept service to remove any doubt that he's amenable to service there? Well, I think – I believe the answer there is that he hasn't been served. The notion that his lawyers, his counsel in Luxembourg wouldn't find an issue with the case or service and to preserve his rights there is critical. But doesn't that – I mean that seems like games playing, doesn't it? I mean yes, you have rights under our law, and I assume it's the same in Luxembourg that you have to be served. On the other hand – and it does seem to me to be a problem here that he's amenable to service and they didn't struggle to find the right address or do whatever they needed to do. And the Luxembourg court said, hey, this is your negligence, end of story. But at the same time, this is a game. This is not about justice. It's not about it would be terrible for him to be sued in Luxembourg. There's no argument that it's terribly inconvenient or a violation of our concepts of due process. It's just ha-ha. You didn't manage to land whatever you had to land, personal service or send the mail to the right address or whatever. And so I'm home free. Why should we countenance that? Well, Judge Lutz, I don't think we're countenancing it. I think that – and I don't think it's a ha-ha moment or a game. I think that the plaintiffs have the burden to serve him there. And by the way, this was before Judge Cote. Judge Cote determined that they just failed to do so. And so – They just failed to do what? To serve him. Okay. Whether they failed to serve him or not is not the same as whether he's amenable to service. So that's the key. He is amenable to service because of the factors that I laid out under Luxembourg law. But they might have failed to serve him because he evaded service, right? I mean it's not – the two things are not inconsistent, are they? I'm sorry. He might have – they might have failed to serve him because he evaded service, right? They're not inconsistent findings, are they? Or inconsistent conclusions? No, they're not inconsistent, but there was no finding that he evaded service. That was an argument that was raised by the plaintiffs below, which the court – which Judge Cote reviewed the record and disagreed with. And this court would have to find that Judge Cote abused her discretion in rendering the forum nonconvenience. Well, I'm just trying to figure – I was also a district judge, and I used to have my share of these. And I guess what the question that came up was frequently, okay, you're saying Mexico, or in this case Luxembourg, is a more convenient place to litigate this. You generally don't get to say, but we have no intention of actually litigating there. Usually, parties will consent. They either have already been served in another place or they consent to be served and to go forward there. But you're not – it seems to me you're definitely not doing that. Am I right? You are correct. And there are cases where plaintiffs will expressly agree to service in another spot, and there are cases where they don't. And that does not mean that forum nonconvenience – So how do we distinguish those cases, the cases where it's a dismissal on condition of consent to service from this case? Why shouldn't we say that he's required to consent to service as a condition of dismissal here? I think the answer to that is that the plaintiffs have the case already in Luxembourg. They should get those defendants before the court. You know, one of the arguments that Mr. Schwartz makes about this proposition is that he is – he ought – is now immune, in effect, from service, at least in this case, because the – So he actually, at this moment, is no longer amenable to service, at least in this lawsuit. That's the argument that's being made. I don't believe that was his – I believe his argument was that he can't commence a new lawsuit and name Ott again because they've already failed to serve him there. Yeah, that's what I'm saying. But they don't need to commence a new lawsuit. They have a lawsuit in Luxembourg. No, no, no, no, but he's saying the reason – at least one reason – the reason we're now talking about, the Ott reason why he has to file a new lawsuit is because there is a proposition, at least as I understand his argument. I'm not saying it's true. He says there's a proposition of Luxembourg law that once a subpoena has been vacated, quashed, whatever the terminology is, for failure to serve, you cannot go back and serve the person again in the same lawsuit. That's one reason why he needs to file a new lawsuit, he says. You understand his argument the same way? I understand. Okay. So A, is he right about that proposition of Luxembourg law? That is that there – once the subpoena has been quashed, you cannot make a new attempt, get a new summons, and try again now in this lawsuit that exists there now. All I can say is that Professor Proom, in reading Mr. Moisey's declaration on that point, says that he sees no reason why additional parties can't be served, including Ott, and that other claims cannot be brought at this point. Again, I'm – Other claims isn't – I mean that's a different problem is the amendment of the complaint to assert new things. Right. The proposition being asserted is that whether Ott was at one time amenable to service in that existing lawsuit, he no longer is, and they can't make another try. That's what he's saying. And I guess one reason why I'm asking you if that's true is because if Mr. Ott intends to raise that very argument in Luxembourg, that would be quite a different thing than just, well, they have to do the service right. Now you're saying even if he's – that's sort of been defaulted and that's just tough luck on the plaintiff. That's their fault too? They should have known that and made sure to do it right? Well, Your Honor, again, based on Proom's declaration, I believe that – That's the argument. However, I think that we would be going down a slippery slope if based on the plaintiff's own failures here to actually serve him. Now a plaintiff can come to the United States and say, well, we can't serve one individual over there. It was our doing, but now let's go and sue under the RICO statute in the Southern District of New York. Right, right, because what you're saying is that would open the door to manipulation by just failing intentionally. They send it to the wrong address and then eventually it gets dismissed and that's the end of that. It would be taking advantage of a foreign country's laws to then seek redress in the United States. Well, that would be a factor that could be considered, but your view is that's dispositive? No, absolutely not. Can I ask a quick question about Investhold? Yes. Are they involved in the Luxembourg litigation at all? No. No. No. The Investhold plaintiff is wholly foreign. They're organized under the laws of the Marshall Islands and Cyprus. They entered into a contract, a purported contract with Mr. Vita. It's a breach of contract claim, pure garden variety breach of contract claim under Luxembourg law. Why they've been involved in this case from the beginning has always been a mystery to us. Judge Cote, it was a mystery to Judge Cote too. I would submit respectfully because Judge Cote said that Investhold's choice of forum here gets absolutely zero deference because they're foreign and have no – there's no connection to the United States. I suppose it might stand or fall with the Kingstown claim because if it's a related scheme, then maybe it should travel together. Well, first of all, it's not related. They argue that certain monies were used by Vita throughout the course of his purported – There's a fraud against Investhold, and then he used the money that he should have done for the – shared in the partnership with them, and he used it for the scheme that harmed Kingstown. Right, but under the contract that's under Luxembourg law. It does seem like that is one full story, so it doesn't seem obvious that they wouldn't necessarily need to be severed or they should proceed differently. I mean you have arguments with respect to Kingstown. Maybe the whole thing stands or falls with that, but wouldn't there be an argument that if it's an appropriate forum for Kingstown that it makes sense that Investhold would travel with the Kingstown claims? No, we don't believe so at all. Well, but Mr. Schwartz, have you actually – I did not get the impression in the brief here that you were arguing as a sort of fallback if your motion fails as to Kingstown. Nevertheless, Investhold's claims should be sent to Luxembourg. That's not what the district court did, and I didn't think you were asking us to do that. We are not, and that's not before – that was not before – The presence of Investhold doesn't add anything to why the case should be brought in the Southern District of New York because they have no claim to be here. But at the same time, you're not saying that they can't be here, period, even if the case brought by Kingstown can be brought here. So in that sense, the answer to Judge Menasche's question, does it stand or fall with Kingstown, is yes, that if Kingstown should not be dismissed for forum nonconvenience, then Investhold gets to ride into the Southern District of New York on their coattails. And if the case against Kingstown should be dismissed for forum nonconvenience, dismissing as to Investhold is a fortiori. Correct, Ron. Can I ask about the dismissal without prejudice? So you say that there was a dismissal without prejudice, and that must have been what happened. So I guess I have two questions. One, I mean, if you asked to dismiss with prejudice, how are we sure that the district court didn't dismiss with prejudice, and would you have any objection to just clarifying that issue? Like you don't dispute that there should have been a dismissal without prejudice on appeal. Yeah, we're not disputing that there shouldn't be a dismissal without prejudice, correct. There should not be dismissal without prejudice. I'm sorry. There should be a dismissal without prejudice. It has to be without prejudice, right? So far, I mean, if it were with prejudice, then I guess that would effectively mean you can't litigate this any place. The race judicata would prevent you from doing it in Luxembourg, too. That's correct. I think it was either double or triple negative, and it should be dismissed without prejudice. All right. So, Mr. Cohen, I was worried you weren't going to get the time that Mr. Schwartz got, but you got your money's worth. Thank you, Your Honor. Thanks. Good morning. All right. Mr. Schwartz, you've got two minutes. We'll see how close we can stick to it. Thank you. Let me focus on three quick things. One. A little louder. I'm having a little trouble hearing you. Sure. Let me focus on three quick things. One, with respect to Mr. Ott, first of all, I promise to give you that citation. It's discussed on page 15 of our reply brief. It is the actual foreign law authority. It's at page 71 of the addendum of foreign law, and it is elaborated upon starting at, I think, page 6 of the declaration of Mr. Moyse that was submitted conditionally in response to the motion to strike. But more fundamentally, I want to get to the issue of who bears the consequences of the failure to serve. Because this Court's precedents say the alternative foreign form must be presently available, must be presently adequate, regardless of why it is adequate or inadequate. And the only times that I'm aware of where the Court has found an exception to that, based on a plaintiff's conduct, is where it was tactical conduct. Where in bad faith, they, for example, missed a deadline or, you know, the Palacios case that they rely upon is the perfect example of that. In that case, actually, Judge Sullivan dismissed a case on foreign nonconvenience grounds on conditions that could be reinstated if the Guatemalan court denied jurisdiction, and that was affirmed by the highest court. The plaintiffs went and sued in Guatemala. It was dismissed for lack of jurisdiction, but they didn't take an appeal to the highest court. So this court said, Judge Sullivan gave you pretty clear instructions. You decided not to follow them. The fact that the form is not adequate now is your fault. That's a totally different situation from this one, where five years before we filed this lawsuit, Kingstown filed a lawsuit in Luxembourg, attempted on numerous occasions to sue Mr. Ott, and was unsuccessful. There's no reason to believe that that was a tactical choice. There was not a U.S. proceeding at the time. The notion which Your Honor has raised that this might create some sort of loophole where a plaintiff could fail to serve someone overseas and then create an opportunity to sue here, that's not a real concern because Mr. Ott can cure it with the stroke of a pen, right? He can deprive us of this argument by consenting to jurisdiction or accepting service to the extent it's available, which is a different substantive point, but to the extent it's available in the foreign court. But he hasn't done that. If he did do that, would that solve your problems or you'd still be opposing? You'd still be appealing, right? That then gets to the substantive issue, which is in the posture in the Luxembourg courts. Can we even re-summons here? And that was the citation that I gave you at the top, which says, having been annulled, we can't re-summons. We would have to initiate a new proceeding. And so that may mean that he is not actually amenable to service now on the existing case, and we know he's not amenable to service in a new case because there would be no Luxembourg domiciliary there. So it may be, again— You can't re-summons him irrespective of his consent? That I don't know the answer to. So that gets to another point I want to make, which is that it seems to me that the appropriate, at least minimum, outcome here would be to remand to the district court to look at the foreign law issues. I think when the district court looks at them— No, no, no. The district court looked at the foreign law issues. We're talking about something much more specific. We're not asking for a do-over here. We've been talking about a particular question with respect to Mr. Ott, and we're talking about the question of consent. Can I ask you—you did add—one of the arguments—did you make the argument to the district court that if there is a form of nonconvenience dismissal, it should be conditioned on Mr. Ott submitting to service? Well, again— There's not a yes or a no answer to that? Not in precisely that way because, again, they didn't tell us what the form was until their reply page. No, no. Come on. Come on. It was litigated—you filed an extra submission about Luxembourg law. You can't fall back on that. You're telling us now that among the other problems—I realize you have other issues, but the one we've been focused on is— should Mr. Ott be required to consent to jurisdiction in Luxembourg, not to contest his presence in Luxembourg? And I think I asked you a very simple question. I was expecting the answer to be yes. Did you make that argument in the district court? Is the answer yes or is the answer no? The answer is no because Mr. Ott was involved in the first round of briefing. He, again, did not put forward Luxembourg as an alternative form until the reply. In our opposition papers, we put forward the declaration and we said you shouldn't allow them to submit— What would be the obstacle in those opposition papers to your saying, by the way, we have this problem with Mr. Ott? Whatever else you do, no matter how mistakenly you think you should dismiss or perform nonconvenience, at the very least you should condition that on Mr. Ott's submitting to service or submitting to jurisdiction or agreeing to participate in this case in Luxembourg. Broadly, as you want to phrase it, what prevented you from saying that? Look, I take the point that we certainly could have anticipated the hypothetical and asked for that. We did not because, again, he wasn't saying Luxembourg. He was saying someplace else. I'm sorry. Well, you could have then said as long as he consents to jurisdiction or service someplace else, problem solved. But you didn't do that. I take the point. But as Your Honor observed before, that results in the adjudication of the claims against Mr. Ott not based on the merits or even on the substantive jurisdictional issues, but just on this game of gotcha. And this Court has repeatedly, even where it hasn't been raised below, required dismissals to be conditioned. But you're the one who's making the motion, right? No. They made the motion. But you're the one who are making the argument about Mr. Ott. So I don't understand why that isn't a natural thing to say in the district court. Because they're the ones that bear the very heavy burden of demonstrating the foreign noncommittee's analysis and the adequacy of the alternative forum. They can only meet that burden. You know, putting aside all the other potential issues here with respect to Mr. Ott, one of the things would be that he would have to consent to appear there, which he has. That's on their side of the ledger. I shouldn't have to ask for that. They have to either demonstrate that he actually is subject to the jurisdiction of the courts or submit to the jurisdiction of district courts to meet their burden, which they have not done. So with respect, I don't think it was something we had to ask for. And I think that is played out in this court's decisions, which often remand with instructions to consider the foreign law issues and craft conditions. And the reason why I suggested that the court do that here is not necessarily for a complete do-over, although I do think it is appropriate for the court to look at these issues afresh, because there really isn't evidence that dealt into these issues. But there are other bundled questions, such as the one Your Honor asked, like can he even be re-summoned in the existing proceeding or not? Because if he can't be, then his consent wouldn't matter, and there's no world in which that forum would be adequate as to him. I also want to point out with respect to conditions, and this is throughout our briefs, and it's a response to Your Honor's questions about the unavailability of the fraud claims, the statute of limitations issue. And setting them apart, whether those – This is still a little different, this case, isn't it, than the garden variety case where somebody comes to New York, files a suit, and the issue is maybe it should be better off somewhere else. You filed the suit in Luxembourg in the first place, right? I mean this is a little different it seems to me. Are there four nonconvenience cases where there's an ongoing suit in a foreign jurisdiction but the court still allows – still says that it's appropriate to have another suit that has some overlap with that suit domestically? The answer is yes. I'm struggling to think of one, but the principle, and this is throughout the international comedy cases and the foreign nonconvenience cases, is that the mere existence of parallel litigation doesn't foreclose a U.S. court from hearing the case. I think it is – it's a relevant consideration to be sure in the balancing of the conveniences, but you only get to that if there is an actual alternative adequate form. It kind of raises an issue when you're saying this kind of – Luxembourg? Fraud cases? They can't do that. They can't have a case like ours in Luxembourg, but you brought your case to Luxembourg. Not this case. We brought a narrow case. Not a RICO case. Not only not a RICO case, not a fraud case. It's a narrow case of violations of directors' duties and conflicts of interest under Luxembourg corporate law. That's like saying, you know, if I'm looking at whether – in sports, right? If you have a play where someone's taking a three-point shot, you can look at whether the person's foot was on the line or not. That's a question of whether they've obeyed the rules. That is a fundamentally different question of whether the referee was bribed and blew the call on purpose. The facts overlap. The injury to some extent may even be similar, but the rights being vindicated are totally, totally different. The rights being vindicated might – like the legal claims might be different, but like the Luxembourg summons does describe hiding facts from counterparties, right? There are sort of fraud-like claims there. It's about undisclosed conflicts of interest, so there are failures to disclose, sure. All right. Well, thank you both. We will reserve decision. This was helpful. We'll now move to the next case on the calendar, which is United States v. Bright.